## FRANK WHITE *v.* THE STATE.*

*(Knoxville.* September Term, 1928.)

Opinion filed October 6, 1928.

**1. CRIMINAL LAW. BIGAMY. UNLAWFUL COHABITATION. INDICTMENT. PLEADING.**

An indictment is not bad for duplicity which follows the statute denouncing the offenses of bigamy and unlawful cohabitation. The statute which created to prevent the scandal and evil examples of permitting men and women to cohabit in any community of the State upon an unlawful second marriage when the first, as well as the last, or either, may have taken place in any other State or county. While bigamy is a distinct offense, in the sense used in this statute it is an element of the unlawful cohabitation prescribed by the statute. Bigamy can only be prosecuted in the county where the second marriage takes place. The venue of unlawful cohabitation under the statute is in any county where the cohabitation takes place. (Post, p. 449.)

Citing: Thompson's-Shannon's Code, sec. 6760; Finney v. State, 40 Tenn. (3 Head), 545; Keneval v. State, 107 Tenn. (23 Pickle), 581.

**2. CRIMINAL LAW. BIGAMY. UNLAWFUL COHABITATION. INSTRUCTIONS TO JURY.**

Where after the case was submitted to the jury they returned into court and wanted to know whether they were trying the defendant for marrying the woman when he had a former wife living, or for continuing to cohabit with her after he learned his first wife was living, the court was sufficiently explicit in his response to the jury in reading a portion of his charge and saying to them and directing them to investigate the guilt or innocence of the defendant upon the charge of unlawful cohabitation. The

jury showed their understanding of this instruction by finding the defendant guilty of unlawful cohabitation in express terms. (Post, p. 450.)

3. CRIMINAL LAW. BIGAMY. UNLAWFUL COHABITATION. GOOD FAITH OF DEFENDANT. QUESTION FOR JURY.

Whether a defendant in marrying the second time acted in good faith, honestly believing that his first wife had procured a divorce, is proper for submission to the jury where it appears that the defendant had married on March 9, 1919, in this State, had gone with his wife to Virginia where they separated, the defendant returning to this State, that on September 10, 1924, he married another woman and continued to cohabit with her; that in 1925 his former wife returned to this State and filed a bill for divorce which was granted in September, 1925; that he was told after coming back to the State that his first wife had procured a divorce in Virginia, which information he believed to be true, and that upon the faith of its truth he contracted a second marriage, mentioning several men from whom he heard of the divorce; that the defendant made no investigation to ascertain the truth of the rumor; that he had been intimate with his second wife who became with child before their marriage; the second wife was only seventeen at the time of the marriage and it was insisted upon by the wife's mother after she learned of her daughter's condition.   (Post, p. 451.)

4. CRIMINAL LAW. BIGAMY. UNLAWFUL COHABITATION. STATUTORY EXCEPTIONS. CONFLICTING DECISIONS.

There are statutory exceptions to the offense of bigamy and unlawful cohabitation which authorize a second marriage after separation of the parties without knowledge of each other for a specified period of time; such as that a person shall not be guilty of the unlawful cohabitation statute whose husband or wife shall continually remain beyond the limits of the United States or absent himself or herself from the other, without the knowledge that the other is living, for the space of five years, or who has good reason to believe that the former husband or wife be dead; and again in the statute which prohibits a second marriage before the dissolution of the first, that the first shall be regarded as

dissolved if either party has been absent from the State five years and is not known to the other to be living. But one is not protected by an honest belief that the former spouse is dead or has procured a divorce, and while the decisions are in conflict, the weight of authority in this country is that unless the parties have been separated and without knowledge of each other for such time, one contracting a second marriage does so at his or her peril. Neither statute authorizes a second marriage regardless of the time of separation by one who has merely good reason to believe his or her former marriage to have been dissolved by divorce. (Post, p. 452.)

Citing: Thompson's-Shannon's Code, sections 6760 and 6761, 4188; Cases collected in Notes 10 Anno. Cas., 415, 14 Anno. Cas., 638, 27 L. R. A. (N. S.), 1097.

5. CRIMINAL LAW. BIGAMY. UNLAWFUL COHABITATION. HONEST BELIEF.

No authority goes to the extent of declaring an honest belief with respect to divorce and death of former spouse might be rested on mere rumor; it should be based on investigation of the report. (Post, p. 453.)

6. CRIMINAL LAW. PRACTICE IN SUPREME COURT.

The plaintiff in error being guilty, having made no investigation, but acting alone upon rumor, cannot rely upon conflicting decisions where the court below gave him the benefit of the rule most favorable to him. (Post, p. 453.)

---

*Corpus Juris-Cyc References: Bigamy, 7 C. J., section 22, p. 1165, n. 4; Criminal Law, 17 C. J., section 3689, p. 341, n. 83; Indictments and Informations, 31 C. J., section 330, p. 771, n. 16.

FROM UNICOI.

Appeal from the Circuit Court of Unicoi County.— HON. GUY CHASE, Judge.

DIVINE & GUINN, for plaintiff in error.

W. F. BARRY, JR., assistant attorney-general, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error has been convicted under section 6760 of Thompson's-Shannon's Code, for marrying and cohabiting with a second wife, having a former wife still living. The jury fixed his maximum punishment at three years in the penitentiary and he has appealed in error to this Court.

*(1)* It is first assigned for error that the indictment is bad for duplicity and that the trial judge improperly overruled this contention.

Section 6760, Thompson's-Shannon's Code, is as follows:

"If any person, being married, shall marry another person, the former husband or wife then living, or continue to cohabit with such second husband or wife in this State, such person shall be imprisoned in the penitentiary not less than two nor more than twenty-one years."

The indictment herein contains only one count. Without setting it out, it is sufficient to say that this court follows closely the section of the Code just quoted. The objection urged is that in thus following the Code section, and having only one count, the indictment, in that one count, charges two felonies—bigamy and unlawful cohabitation with the second wife.

This section of the Code does denounce the two distinct offenses just mentioned. *Finney* v. *State,* 40 Tenn. (3 Head), 545; *Keneval* v. *State,* 107 Tenn., 581. Bigamy,

157 Tenn.—29.

however, is an element of the unlawful cohabitation pro-
scribed by section 6760. A previous marriage, still sub-
sisting, must be charged to bring the second marriage
and consequent cohabitation within this Statute. Bigamy
could only be prosecuted in the county where the second
marriage took place. "This new offense was created to
prevent the scandal and evil examples of permitting men
and women to cohabit in any community of the State,
upon an unlawful second marriage, when the first, as
well as the last, or either, may have taken place in any
other State or County." *Finney v. State, supra.*

We think, therefore, the indictment did not undertake
to charge bigamy as a substantive offense, but only
charged it as an ingredient of the unlawful cohabita-
tion forbidden by section 6760. The indictment was so
construed by the Court below and we think this was
proper.

*(2)* It appears that after the case was submitted to
the jury they returned into the court room and asked
His Honor for further instructions. They wanted to
know whether they were trying defendant "for marrying
this woman when he had a former wife living or for con-
tinuing to cohabit with her after he learned his first wife
was living and undivorced."

In response to this inquiry, the Court read a portion of
his charge to the jury which he was of opinion answered
their question, and directed them to investigate the guilt
or innocence of defendant upon the charge of unlawful
cohabitation.

It is urged that the Court below was not explicit and
did not so clearly respond to the jury's question as he
should have done. But evidently the jury understood

him for they found the defendant guilty of unlawful cohabitation in express terms.

*(3)* Coming to the facts of the case it seems that the plaintiff in error married one Caroline West, March 9, 1919, in Unicoi County. The couple moved to Virginia, where they separated, and White came back to Tennessee. On September 10, 1924, he married Clara Bell Teague and proceeded to cohabit with her. In 1925 his first wife came to Tennessee and filed a bill for divorce, which was granted her in September, 1925. After the divorce bill of the first wife was filed, plaintiff in error was indicted herein.

The plaintiff in error testified that some time after coming back to Tennessee he was told that his first wife had procured a divorce from him in Virginia; that he believed this information was true, and that upon the faith of its truth he contracted the second marriage. He mentioned several men from whom he claimed to have heard of his first wife's divorce. Only one of these men, however, was introduced to corroborate defendant below and this witness had no definite knowledge and only passed on a rumor in his communication to plaintiff in error. Two or three other witnesses were introduced and stated they had heard that the wife of plaintiff in error had secured a divorce, but it developed that they likewise had only heard a rumor. The plaintiff in error made no investigation as to the truth of the reports he claims to have reached him.

It was developed in the cross-examination of the second wife that plaintiff in error had been paying attention to her for some months before they were married; that the relations between them had reached an undue intimacy and that she became with child some months before their

marriage. She also testified that she was about seventeen years of age at the time that these relations began, and the State insists that the second marriage of the plaintiff in error was entered into by him to escape a prosecution under the age of consent law, and without any honest belief that his first wife had secured a divorce. It does appear that the mother of the second wife, after she learned of the daughter's condition, was naturally quite insistent upon a marriage.

Upon these facts the trial judge left it to the jury to say whether the plaintiff in error contracted his second marriage in good faith, honestly believing that his first wife had procured a divorce. Plaintiff in error had been living apart from his first wife less than five years at the time of his second marriage.

(4) Section 6761, Thompson's-Shannon's Code, provides that a person shall not be guilty under section 6760 above quoted, whose "husband or wife shall continually remain beyond the limits of the United States, or absent him or herself from the other, without the knowledge of the party remarrying that the other is living, for the space of five years together, or who has good reason to believe such former husband or wife to be dead."

Section 4188, Thompson's-Shannon's Code, prohibits a second marriage before the dissolution of the first, but provides that "the first shall be regarded as dissolved for this purpose if either party has been absent five years and is not known to the other to be living."

There is a statutory exception, resembling section 6761, Thompson's-Shannon's Code, to the bigamy and unlawful cohabitation Statutes in every jurisdiction, authorizing a second marriage after separation of the parties,

without knowledge of each other, for a specified period of time.

The decisions are conflicting as to whether an honest but mistaken belief that a former spouse is dead or divorced will protect one who contracts a second marriage under such belief, the parties not having lived apart and without knowledge of each other for the statutory time. The decided weight of authority in this country is that, unless the parties have been separated and without knowledge of each other for such time, one contracts a second marriage at his or her peril, and is not protected by an honest belief that the former spouse is dead or has procured a divorce. There are, however, decisions to the contrary in this country and the rule in England seems to be to the contrary. See cases collected in Notes 10 Anno. Cas., 415, 14 Anno. Cas., 638, 27 L. R. A. (N. S.), 1097.

*(5)* Section 6761, Thompson's-Shannon's Code, seems to authorize the second marriage of either party "who has good reason to believe such former husband or wife to be dead." Neither that Section, however, nor Section 4188 appears to authorize a second marriage, regardless of the time of separation, by one who has merely good reason to believe his or her former marriage to have been dissolved by divorce.

*(6)* We do not find it necessary in the case before us to consider further this conflict of decision. The plaintiff in error here is guilty, whichever rule be applied. The trial judge applied the rule most favorable to him. Plaintiff in error made no investigation of the report that his former wife had obtained a divorce, but acted on a mere rumor. No authority would go to the extent of declaring that an honest belief with respect to a matter like this might be rested on rumor. There must be some diligence

and *bona-fide* effort to ascertain the truth before it can be claimed that a conclusion of fact has been reached in good faith.

A number of other errors are assigned which we have considered and find without merit.

The judgment below is accordingly affirmed.